Edward W. DUFFIN, Appellant,

v.

Norman CARLSON, Director Bureau
of Prisons, et al.

No. 79–1533.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 11, 1980.

Decided Sept. 24, 1980.

Michael Ryan, Asst. U.S. Atty., Washington, D.C., with whom, Charles F. C. Ruff, U.S. Atty., John A. Terry and John R. Fisher, Asst. U.S. Attys., Washington, D.C., were on brief for appellee. H. Lowell Brown, Asst. U.S. Atty., Washington, D.C., also entered an appearance, for appellee.

David Simon *, Washington, D.C., with whom Michael Geltner, Washington, D.C. (appointed by this Court) for appellant.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Duffin, a prison inmate, in response to his prior requests, had been given access to some documents from the files of the Bu-reau of Prisons, and in this appeal contends that he is entitled under the Freedom of Information Act to three newly discovered documents that are also in the possession of prison authorities. The records that Duffin demands consist of confidential information furnished only by confidential sources, *i.e.*, by informants. We deny appellant's claim since Section 552(b)(7)(D) of the Freedom of Information Act specifically exempts such confidential information from its disclosure requirements.

Appellant's brief to this Court states: "That the [Privacy Act, 5 U.S.C. § 552a(j)] permits an agency head to exempt from disclosure under the Privacy Act 'any system of records ... which consists of ... information compiled for the purpose of a criminal investigation.'" The brief also states "that [the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7)(D)] permits the withholding of information compiled for law enforcement purposes if released [sic] would disclose the identity of a confidential source." (Appellant's Brief at 9) We accept as accurate appellant's interpretation that the Privacy Act exempts the requested documents from disclosure. However, we deny that appellant's interpretation of § 552(b) (7)(D) of the Freedom of Information Act considers the precise exemption contained in § 552(b)(7)(D) that is dispositive of this case. The relevant provisions of the Privacy Act are set forth below.[1] For

---

\* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

1. · The relevant portion of the Privacy Act, 5 U.S.C. § 552a, provides:

(j) General exemptions.–The Head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (3) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is–
...
(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

The Department of Justice has promulgated appropriate rules on Production or Disclosure of Material or Information. 28 C.F.R. Part 16, Sec. 16.1 *et seq.* Section 16.97 provides for

§ 552(b)(7)(D) of the Freedom of Information Act *see infra* at pages 711–712.

On this appeal, as above stated, appellant admits that the three documents are exempt from disclosure under the Privacy Act, 5 U.S.C. § 552a. This is consistent with the legislative history of the Act. The Senate Committee Report on the Privacy Act, S.Rep.No. 93–1183, 93d Congress, 2d Sess., Sept. 26, 1974, U.S. Code Cong., Admin. News 1974, pp. 6916, 6937, points out that "law enforcement files" cover information of two general classes; (1) " 'criminal history information' . . . sometimes called rap sheets . . .", and (2) "intelligence, or investigative files . . ." As a "general principle [the Committee Report indicates] . . . records [constituting 'criminal history information'] are subject to . . . the right of access provision." *Id.* However, with respect to the second class of records, Congress did *not* "allow individuals to see their own intelligence or investigative files." As the Senate Committee Report stated:

> The second class of information generally maintained by law enforcement agencies are intelligence, or investigative files. These files contain highly sensitive and usually confidential information collected by law enforcement officers in anticipation of criminal activity, such as by organized crime figures, or in the course of investigating criminal activity which has already occurred. It was the Committee's judgment, shared by most criminal justice privacy experts and reflected in the pending criminal justice privacy legislation, that all of the provisions of title II of S. 3418 could not be applied to such sensitive information. *In particular, it would not be appropriate to allow individuals to see their own intelligence or investigative files. Therefore, the bill exempts such information from access and challenge requirements of title II.* However, most of the other general accuracy and updating provisions would apply, subject, of course, to the rules and regulations issued by the agency head in the course of implementing such provisions. (Emphasis added)

*Id.*, 23, U.S. Code Cong. & Admin. News 1974, p. 6938.

Appellant, however, questions whether the fact that such documents are exempt from disclosure under the Privacy Act "obviates the need to consider whether disclosure may nonetheless be required by the *Freedom of Information Act*, 5 U.S.C. § 552." (Appellant's Brief, p. 2). Congress indicated in its latest enactment, i.e., the Privacy Act, that "it would *not* be appropriate to allow individuals to see their own intelligence or investigative files" containing "sensitive and usually confidential information." Senate Committee Report, *supra* at 23, U.S. Code Cong. & Admin. News 1974, p. 6938. This is particularly true since the 1974 amendments to that Act were pending at the same time as the Privacy Act, were *in pari materia*, and were adopted on November 21, 1974, only 40 days before the Privacy Act was signed. From the Privacy Act's prohibition it can be strongly argued that Congress foreclosed disclosure of the same confidential information under the Freedom of Information Act. Why would Congress in one Act categorically prohibit disclosure of information furnished by informants and in another Act compel disclosure of the same confidential information? However, we need not determine whether the Privacy Act prohibition of disclosure forecloses disclosure pursuant to the Freedom of Information Act because the FOIA contains a specific exemption from disclosure for "confidential information furnished only by the confidential source."

The relevant provisions of the Freedom of Information Act states:

> § 552(b). This section does not apply to matters that are . . .

> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (D) disclose the identi-

"Exemption of Bureau of Prisons Systems—Limited Access." Section 16.97(a)(4) provides that the "Inmate Central Record System," in which subject records were filed, is "exempt from 5 U.S.C. 552a(c)(3), (e)(4)(H), (e)(8), (f) and (g)."

ty of a confidential source *and, in the case of a record compiled by a criminal law enforcement agency in the course of a criminal investigation, . . . confidential information furnished only by the confidential source, . . ."* *(Emphasis added)*

Appellant by the footnote in his brief, cited above, mistakenly construes the exemption provided for in subsection (7)(D) as being limited to "the withholding of information compiled for law enforcement purposes [which] if released [sic] would disclose the *identity* of a confidential source." The statute does provide for such an exemption, but it goes further by adding, as the "and" indicates, another exemption for

> records compiled by a criminal law enforcement agency in the course of a criminal investigation [which disclose] *confidential information furnished only by the confidential source . . .*

*Id.*

■ It would be a misinterpretation of the Act to construe it as not exempting records containing "confidential information furnished . . . by [a] confidential source" unless the record also "disclose[s] the identity of [the] . . . confidential source." Subsection (b)(7)(D) has two aspects. It protects from disclosure (1) the *"identity"* of a confidential source, *and* (2) confidential *"information"* furnished only by a confidential source. The two clauses[2] thus provide two separate exemptions, not one exemption protecting against the disclosure of the identity of confidential sources and another protecting confidential information *only* if the record also indicates the identity of the confidential source. A plain reading of the statute indicates that confidential information furnished only by a confidential source need not divulge the "identity" of the confidential source in order to be protected from disclosure. Such an interpretation results from the inclusion of the conjunction "and" between the two clauses.

---

**2.** The subsection also provides a third exemption for national security intelligence investigations.

This conclusion is also supported by decisional law. In *Church of Scientology v. U.S. Department of Justice*, 410 F.Supp. 1297 (C.D.Cal.1976), the Court held under § 552(b)(7)(D) that *information* furnished by a confidential source is exempt.

The Act clearly states that confidential information furnished by a confidential source compiled in the course of a criminal investigation is not to be revealed. Congress feared that the revelation of even apparently innocuous information might inadvertently reveal the identity of confidential sources. Moreover the Congress believed that potential sources would fear that disclosure of information would reveal their cooperation and that such sources would be discouraged from cooperating. Thus the Joint Explanatory Statement of the Committee of Conference explained that "[W]here the records are compiled by a criminal law enforcement authority, *all* of the information furnished only by a confidential source may be withheld if the information was compiled in the course of a criminal investigation." (Emphasis in original)

410 F.Supp. at 1302.

The opinion also reviews the Congressional history of the passage of the 1974 Amendments. President Ford vetoed the bill because, in part, he felt that "confidentiality would not be maintained." However, Senator Hart, sponsor of the amendatory language that we rely upon here, responded:

> The major change in conference was the provision which permits law enforcement agencies to withhold "confidential information furnished only by a confidential source." In other words, the agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential source. The President is therefore mistaken in his statement that the FBI must prove that disclosure

would reveal an informer's identity; *all the FBI has to do is to state that the information was furnished by a confidential source and it is exempt.* (Emphasis added by district court).

120 *Cong. Rec.* 36871 (1974). Congress then passed the amendments over the veto of the President. The Court in the case reviewed above then held that the word "source" in "confidential source" included information provided by law enforcement agencies, and withheld information provided by such agencies. 410 F.Supp. at 1302–03.

*Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977), implicitly holds that certain files containing the identities of persons interviewed by the FBI *and* information received from them were "investigatory records compiled for law enforcement purposes", acquired under an assurance of confidentiality, and therefore exempt. *See also* opinion of Chief Judge Wright, concurring in part and dissenting in part, in *Marks v. C.I.A.,* 590 F.2d 997, 1011, n.19 (D.C.Cir. 1978), which presages the holding in the instant case.

 Therefore, it is not necessary to discuss the extent to which the documents do, or might, disclose the identity of the confidential informant. This exemption from disclosure rests on broader grounds. Because the three records as "confidential information" under (b)(7)(D) are exempt in their entirety from disclosure, it is unnecessary and contrary to the statute to consider redaction of the details of the documents that might identify the informants.

 We have examined the three documents *in camera,* and determined that § 552(b)(7)(D) of the statute *exactly* describes the documents in question and the information they contain. Each of the three documents consists of confidential information only from confidential sources and each contains reports of criminal activities committed by several prison inmates, including Duffin and others. The documents also contain information with respect to *modus operandi,* that apart from names, could be used to identify other prisoners engaged in criminal activities and their confederates in crime. The sources of the information are stated to be several confidential informants. The records are investigatory in nature. They are compiled by the Bureau of Prisons, which we find to be a criminal law enforcement authority, acting in the course of a criminal investigation for law enforcement purposes.[3]

It is significant that Congress in the Privacy Act also recognized that prisons were law enforcement agencies, by exempting—

records ... maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including ... the activities of ... *correctional ...* authorities ...

5 U.S.C. § 552a(j)(2). (Emphasis added) Prisons perform as their principal function one of the most important duties pertaining to the enforcement of the criminal laws, *i.e.,* the execution of sentences in criminal cases adjudging confinement to the custody of the Attorney General. Therefore, they were properly determined by Congress to be a law enforcement agency or component thereof. As such, prison authorities also necessarily have the obligation, as here, to impose discipline for violation of the criminal laws and prison regulations by convicted prisoners who are confined in their custody. To do this the prison must investigate and maintain sources of intelligence. In so acting prisons perform law enforcement functions. Also, our *in camera* examination of the three records, and the findings of the District Court under the Privacy Act disclose that each of the three documents consists of "confidential information furnished *only* by the confidential source." Therefore, under § 552(b)(7)(D) of the Freedom of Information Act, each of the documents is exempt from disclosure in its entirety.

Under such circumstances, judicial economy allows this Court to affirm the judg-

---

**3.** The prison investigated the sale and distribution of narcotics and other controlled sub- stances for the purpose of enforcing the criminal laws, particularly against its inmates.

**714**

ment of the District Court on the grounds stated by it and upon the additional grounds set forth above that have resulted from our *in camera* examination of the questioned records. *Oklahoma v. Civil Service Comm'n*, 330 U.S. 127, 134 n.3, 67 S.Ct. 544, 549, 91 L.Ed. 794 (1947); *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *United States v. McFarland*, 348 F.2d 215, 216 (3d Cir. 1965); cf. *Wirtz v. Local 125, Laborers' International Union*, 389 U.S. 477, 479–480, 88 S.Ct. 639, 640, 19 L.Ed.2d 716 (1968); *National Automatic Laundry and Cleaning Council v. Schultz*, 143 U.S.App.D.C. 274, 443 F.2d 689 (1971).

A good case could also be made out for applying exemption (b)(7)(A) on the ground that "production of such records would (A) interfere with enforcement proceedings . . . [and] (E) [would] disclose investigative techniques [and] procedures, . . ." However, our application of the (b)(7)(D) exemption to the questioned records makes it unnecessary to discuss the possibility of applying additional exemptions.

■ Insofar as Duffin's claim to attorney's fees is concerned we rely on the legal and factual analysis of Judge Flannery's District Court opinion.

The teachings of *Cox [v. United States Department of Justice*, 601 F.2d 1 (D.C. Cir.1979)] dictate that the instant plaintiff fails to qualify for attorney's fee eligibility. Three weeks before he filed the instant suit, the plaintiff was granted access to review all but three documents related to the November 30, 1977 drug incident report. Prison authorities maintained that portions of the three documents identified a confidential source. The court's Memorandum and Judgment of April 6, 1979, affirmed the employment of 5 U.S.C § 552(b)(7)(D) (information identifying an informant) to withhold the deleted portions of these documents.

The plaintiff did not substantially prevail. The Bureau of Prisons provided the plaintiff access to all but three documents, and the plaintiff's lawsuit failed to win their release. Absent a causal nexus between this suit and the release of any documents, the plaintiff is ineligible for the grant of attorney's fees.

We agree, and since the factual situation has not changed in any substantial respect we reach the same conclusion as the District Court and affirm the denial of attorney's fees for the reasons stated.

CONCLUSION

The three documents in question are exempt from disclosure under the Privacy Act, 5 U.S.C. § 552a and the Freedom of Information Act, 5 U.S.C. § 552; and Duffin has not "substantially prevailed" in his action so as to be entitled to attorney's fees.

*Judgment accordingly.*