**James Joseph PAINTER,
Plaintiff-Appellee,**

v.

**FEDERAL BUREAU OF INVESTIGA-
TION et al., Defendants-Appellants.**

No. 79–2570
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 18, 1980.

Leonard Schaitman, Atty., Mark N. Mutterperl, Howard S. Scher, U. S. Dept. of Justice, Washington, D. C., for defendants-appellants.

Larry W. Thomason, Decatur, Ga., for plaintiff-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This appeal raises the narrow question whether the Privacy Act, 5 U.S.C. § 552a, is a "statute" within the meaning of one provision of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(3). That subsection of the FOIA provides that the FOIA does not apply to matters that are "specifically exempted from disclosure by statute," as long as the exempting statute meets certain basic requirements.[1] The district court below determined that the Privacy Act was not such a statute, and accordingly ordered the Federal Bureau of Investigation to disclose the material Painter sought under the FOIA as to which the Government claimed a Privacy Act exemption applied.[2]

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

1. 5 U.S.C. § 552(b)(3) provides that the disclosure provisions of the Freedom of Information Act, 5 U.S.C. § 552 (1976) do not apply to matters that are "specifically exempted from disclosure by statute (other than § 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the

issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld . . .."

2. In its unreported decision in this case, the district court said:

Far from indicating that the Privacy Act was intended to shield materials from public disclosure which were otherwise accessible under the FOIA, the legislative history of the

Appellee, James Painter, was a special agent of the FBI dismissed on October 18, 1977 for several reasons not relevant on this appeal. He invoked the provisions of the FOIA to obtain access to records pertaining to his dismissal. The FBI released a number of documents to him, but asserted that portions of those documents and certain other documents were exempt from disclosure. The Government maintained that some of the withheld information was exempt from disclosure under exemption (b)(6) of the FOIA, 5 U.S.C. § 552(b)(6), and that other information was exempt under exemption (k)(5) of the Privacy Act, 5 U.S.C. § 552a(k)(5). The district court granted summary judgment in favor of the Government with regard to all documents and portions of documents as to which the FOIA exemption had been asserted, and granted summary judgment for Painter with regard to all documents and portions of documents as to which the Privacy Act exemption had been asserted. Reviewing the legislative history of the Privacy Act, which was enacted later than the FOIA, the district court correctly concluded that the Privacy Act was intended to provide "rights to the individual with respect to his records beyond the point where access by the public to such records ends and was not intended to restrict his rights as a member of that public." Reasoning that it would therefore

be anomalous to permit the Government to rely on the Privacy Act to block a disclosure that would otherwise be required by the FOIA, the district court finally concluded that the Privacy Act was not the kind of statute referred to in 5 U.S.C. § 552(b)(3).

With that conclusion we disagree. Subsequent to enactment of the FOIA, Congress passed two other open records acts that are relevant here. The Privacy Act, enacted in 1974, is one. The other is the Government in the Sunshine Act (Sunshine Act), 5 U.S.C. § 552b. Congress was clearly aware that these various open records acts overlapped in places. When it enacted the Privacy Act, for example, Congress specifically provided that no agency could rely on an FOIA exemption to withhold from an individual any record to which that individual would otherwise be entitled under the provisions of the Privacy Act. 5 U.S.C. § 552a(q). Similarly, when in 1976 Congress enacted the Sunshine Act, it amended the provision of the FOIA with which we are now concerned to specify that exemptions under the Sunshine Act could not be asserted to block disclosure under the FOIA. Government in the Sunshine Act, Pub.L. No. 94–409, § 5(b), 90 Stat. 1247 (amending 5 U.S.C. § 552(b)(3)).

The district court inferred that Congress did not intend Privacy Act exemptions to be applicable in FOIA cases. We reach the

former states that the statute "is designed to preserve the status quo as interpreted by the courts regarding the disclosure of personal information under that section (FOIA)." Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, 120 *Cong.Rec.* 12,243, 12,244 (daily ed. Dec. 18, 1974); *id.* at 21,815, 21,817 (daily ed. Dec. 17, 1974). It thus appears that the Privacy Act provides rights to the individual with respect to his records beyond the point where access by the public to such records ends and was not intended to restrict his rights as a member of that public. Buttressing this conclusion is 5 U.S.C. § 552a(b)(2), which provides that, although many records about an individual cannot be disclosed under the Privacy Act without the individual's consent, if disclosure is called for under the FOIA, no consent need be obtained. *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed.Reg. 28,948, 28,954 (July 9, 1975). This provision, like the legislative his-

tory, indicates that the Privacy Act is not to be used to block disclosures required by the more general Freedom of Information Statute.

The court therefore concludes the material covered by the Privacy Act exemptions do not, without more, fall within exemption 3 of the Freedom of Information Act, 5 U.S.C. § 552(b)(3), which protects documents "specifically exempted from disclosure by statute . . . ." While it is true that there is some tension between the two statutes, and that the literal wording of exemption 3 can be read to include the Privacy Act, the court cannot ignore the legislative history and the general structure of these laws. *See generally Train v. Colorado Public Interests Research Group, Inc.,* 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). Given this conclusion, defendants must supply plaintiff with those documents for which they have claimed only an exemption under 5 U.S.C. § 552a(k)(5).

opposite conclusion.[3] Congress has obviously been aware of the interplay between these various open records acts, and in the instances just noted it specifically indicated when the exemptions of one act should not apply to disclosures mandated by another. We therefore decline inferentially to limit the scope of 5 U.S.C. § 552(b)(3) where Congress has not specifically indicated an intent to do so.

Accordingly, we reverse the district court's summary judgment in favor of Painter, and remand with instructions to consider the applicability of the Privacy Act exemption (k)(5), 5 U.S.C. § 552a(k)(5), to the material sought by Painter as to which the government claimed the Privacy Act exemption applied.

REVERSED in part and REMANDED with instructions.

**3.** We note that in a recent case, *Terkel v. Kelley*, 599 F.2d 214 (7th Cir. 1979), the Seventh Circuit reached the same result we have arrived at here. That court said:

Although the Freedom of Information Act does not contain a comparable exemption [to Privacy Act exemption (k)(5)], we agree with the lower court that the two statutes must be read together, and that the Freedom of Information Act cannot compel the disclosure of information that the Privacy Act clearly contemplates to be exempt.

599 F.2d at 216. Our holding, however, is not so broad. We only hold that material exempted from disclosure under the provisions of the Privacy Act are matters "specifically exempted from disclosure by statute" under 5 U.S.C. § 552(b)(3).